*442 OPINION OF THE COURT
Matthew F. Coppola, J.
By this petition, the Westchester County Pharmaceutical Society, Inc. seeks to quash a subpoena duces tecum served upon it by the Attorney-General. The subpoena seeks information relevant to the Attorney-General’s investigation of whether New York pharmacists participated in a group boycott of a proposed New York State drug plan. The ground asserted quashing the subpoena is the claim that pharmacists are beyond the scope of the Donnelly Act (General Business Law § 340 et seq.), the statute under which the investigation is proceeding.
The Attorney-General has reason to believe that petitioner on behalf of its membership engaged in a group boycott, along with other pharmacists and trade association, of the proposed prescription drug plan for New York State employees and retirees scheduled to begin on July 1, 1986. The plan covers several hundred thousands of present and retired State employees. The Attorney-General’s belief is based on circumstantial evidence, as well as confidential information which the Attorney-General has offered to present in camera.
The powers and duties of the Attorney-General with regard to Donnelly Act investigations have recently been summarized in Matter of American Dental Coop. v Attorney-General of State of N. Y. (— AD2d — [1st Dept]). That summary need not be repeated here, especially since petitioner has not taken the usual approach of attacking the relevance of the information sought. Thus, it can be assumed for the purpose of this application that the relevance of the information sought and the factual basis for the investigation have been satisfied to the extent necessary as defined by the aforementioned Dental Coop, case and the cases cited therein.
The Court of Appeals has previously exempted doctors and attorneys from the coverage of the Donnelly Act (Matter of Freeman, 34 NY2d 1; People v Roth, 52 NY2d 440). Petitioner argues that by analogy, pharmacists should also be exempt. This court disagrees.
The Freeman case (supra) dealt with attorneys’ minimum schedules. The Donnelly Act had been amended to include services in its coverage, declaring void
"[e]very contract, agreement, arrangement, or combination whereby
"[competition or the free exercise of any activity in the *443 conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained” (General Business Law § 340 [1]).
The objectant in Freeman argued that the addition of services to the statutory application extended to attorneys’ fees. Examining the legislative history, the Court of Appeals rejected this interpretation, finding that the amendment’s purpose was to close the loophole which previously existed regarding services such as laundering, dry cleaning, shoe repairing and the like.
The Freeman court determined that the legal profession is not a business or trade as that term is used in the Donnelly Act and went on to list the characteristics of a profession as distinguished from a business. It is these characteristics upon which petitioner relies in the present action:
(1) "the requirements of extensive formal training and learning”;
(2) "admission to practice by a qualifying licensure”;
(3) "a code of ethics imposing standards qualitatively and extensively beyond those that prevail or are tolerated in the marketplace”;
(4) "a system for discipline of its members for violation of the code of ethics”;
(5) "a duty to subordinate financial reward to social responsibility”; and
(6) "an obligation on its members, even in nonprofessional matters, to conduct themselves as members of a learned, disciplined, and honorable occupation” (Matter of Freeman, supra, at 7).
After detailing the history of the Bar, its public service and self-regulation, the court concluded:
"Today, specific statutes provide for broad judicial power and control over the profession (Judiciary Law, § 90, subd. 2; see Gair v. Peck, 6 N Y 2d 97, 111, app. dsmd. and cert. den., 361 U. S. 374; People ex rel. Karlin v. Culkin, 248 N. Y. 465, 469, 471-472).
"Even a superficial examination of the regulatory system applicable to the Bar suggests that if the Legislature had intended to reach alleged economic restraints, like fee schedules, it would have done so either by specific statute, or by court rules and controls within the existing scheme for judicial oversight of the Bar. Judicial regulation would, as with contingent fees and the like, be much more expeditious, *444 effective, and direct than the comparatively clumsy device of antitrust law enforcement.
"Consequently, it is concluded that neither by virtue of the statutory language, the legislative history, or intent of the Legislature does the Donnelly Act apply to the legal profession.” (Matter of Freeman, supra, at 9.)
The other landmark decision, People v Roth (supra), held simply that: "Since we can discern no principled basis for distinguishing between the legal profession and the medical profession, at least for purposes of the Freeman rule, we are obliged to conclude that the medical profession is similarly insulated from liability under the Donnelly Act.” (52 NY2d, supra, at 447.)
There is, however, a very basic distinction between pharmacists on the one hand and doctors and lawyers on the other. Doctors and lawyers provide services. Pharmacists provide goods — they sell drugs and related products. The distinction raised in Freeman and continued in Roth subsumes the providing of services. In fact, petitioner’s brief herein asserts that: "as the Court of Appeals has held, 'combinations among licensed professionals involving the provision of professional services are exempt from the proscriptions of the Donnelly Act.’ People v Roth 52 N.Y.2d 440, 447” (emphasis supplied). The question of whether pharmacists are professionals for purposes of the Freeman rule is irrelevant. That question does not become pertinent unless the alleged violation relates to combinations involving the provision of services.
Thus, the court rejects petitioner’s application on the ground that its constituency sells goods. Whatever services are provided by pharmacists are ancillary to their principal occupation of sellers of goods. Pharmacists essentially engage in retail trade. Nothing in Freeman or Roth suggests that sellers of goods are exempt from an otherwise applicable and appropriate statute because they are "professionals”.
Moreover, if the issue were relevant, the court would reject the proposition that pharmacists are professionals according to the Freeman rule. This is not to denigrate pharmacists or to suggest that they are not professionals as that term is commonly understood. But in Freeman, the analysis suggests that the term was used as one of art and included the very stringent statutory scheme of regulation which obviated the need for additional regulation by operation of the Donnelly Act. The court is unconvinced by petitioner’s papers that such *445 extensive regulation by statute exists for pharmacists. Consequently, there exists no alternative statutory scheme suggesting legislative intent to exclude pharmacists from the Donnelly Act’s coverage.
Petitioner has alternatively argued that, if the subpoena is not quashed, document No. 9 be limited. That request seeks the calendars, appointment books and telephone logs kept by or for each person who had responsibility for or was involved in any decision by petitioner to support, oppose, or participate in the drug plans during a certain period of time. Petitioner asserts that the people involved are unpaid volunteers who have no office at petitioner’s headquarters and keep none of the aforementioned documents at headquarters. Thus, concludes petitioner: "Because any 'calendars, appointment books and telephone logs of the members of petitioner’s Board of Directors are personal papers of such Board members not within petitioner’s possession, custody, or control, their production cannot properly be required by a Subpoena addressed to petitioner.”
The court finds petitioner’s argument to beg the question. The facts alleged do not preclude petitioner from having the legal right to obtain the requested documents from its directors. Merely because the directors serve without pay and are not on the premises does not usurp petitioner’s right to the paperwork generated by the work done for petitioner. Thus, the court will not limit the request in the manner sought by petitioner.